## PEOPLE v. FELDMAN.

(Supreme Court, Appellate Division, First Department. December 12, 1902.)

1. RAPE—EVIDENCE—SUFFICIENCY.

 On appeal from conviction of rape, evidence considered, and *held* that a new trial would be awarded, under Code Cr. Proc. § 527, providing the appellate court may order a new trial on appeal in a criminal case when it appears that the verdict is contrary to the weight of evidence.

 Ingraham and Hatch, JJ., dissenting.

Appeal from court of general sessions, New York county.

Abraham Feldman was convicted of rape, and he appeals. Reversed.

The indictment was for the crime of rape in the second degree and abduction. The abduction count was withdrawn when the prosecution rested. The charge is that about 7 o'clock on Sunday morning, June 16, 1901, the defendant perpetrated an act of sexual intercourse with one Pauline Kenner, a girl under 18 years of age, who was not his wife, under circumstances not amounting to rape in the first degree. The defendant, a young man 21 years of age, had been in the business of making cloaks and jackets with his father at 374 Canal street, New York City, for three years. They occupied a loft consisting of two rooms, divided by a partition, on the third floor of No. 374, and the complainant was employed by them there. She testifies that she had worked in this shop but three days before the 16th, reporting for duty every morning at 8 o'clock, but was directed on Friday by the defendant to come to the shop on Sunday morning at 7 o'clock, as they closed on Saturday; that he had never taken any liberties with her or made any advances to her prior to her coming to work on Sunday morning; that when she arrived that morning, about 7 o'clock, she found the defendant and another employé there; that the defendant came to where she was working and placed one hand on her shoulder, and "then I said to him that my sister-in-law told me to beg him to let me go home. It was a lie. It was not true, but I told him only because he used to come near me"; that he then gave her a jacket on which to sew five buttons, after finishing which, and after telling him, on account of his being disinclined to let her go, owing to the pressure of business, that she desired to go to Newark to attend a wedding, she started downstairs on her way home; that he followed, and "caught" her on the second floor; that she broke away from him, but that he "caught" her again on the first floor, and "held her fast," "laid" her down on the floor, and had connection with her, despite her cries and resistance; that this took place on a wooden floor, with the front door of the place halfway open, and occupied about five or six minutes, during all of which she screamed and hallooed, but no one came to her assistance; that when he let her up she went to her home, and from there started for Newark at about 9 o'clock that morning with her whole family, and did not return until night, the trip being for pleasure only, and there being no wedding; that she did not mention this occurrence with the defendant until 12 o'clock that night, when she told her sister, who thereupon told her mother. The sister testified that she called at the defendant's place of business with the defendant the following morning. Her version of the conversation with the defendant is as follows: "I asked him what was the matter, that he had with my sister. He said: 'Don't talk so loud, and keep quiet. I will settle with you.' Q. Just repeat over again what you asked him. A. When I came in, I asked for his father. Then he said that 'father is not here.' Then he asked me what I want. Then my sister came up, and I asked him the question what he had with her. He said: 'I made a mistake. Come on. We will settle. How much do you want?'" This is the only corroboration in the case tending to connect the defendant with the commission of the crime. A female physician was called by the people, and testified to an examination made shortly after the above interview on Monday at 9 o'clock, at which she found evidences of rupture by some blunt instrument, and that "the penetration appeared to be a recent one. The parts were very raw, and the surface of the vagina was bleeding and raw, as though it had been very recent"; that the child was in an exceedingly nervous and fainting condition when in her office, and was brought there by a Mrs. Soloman. Opposed to this is the testimony of the defendant, who denies his guilt and the conversation testified to by the complainant's sister; the testimony of two men, who say they were in the defendant's shop on this Sunday, waiting for their employer to open up his place of business in the loft across the hall, and a man employed by defendant and his father, the three of whom claim that defendant stayed in the shop some time after the girl left, and that they heard no cries; and the testimony of a man who occupied a room separated from the alleged scene of the assault only by a defective wall, through which

he claims that the noise of a struggle or screams would certainly have been transmitted, and that he heard nothing of the kind. The man employed by defendant stated that there was another operator in the shop that morning, besides those named, but this man was not called to testify. The complainant stated that there was one operator in the room when she came, but she also answered "No" to the question, "Did anybody else come there to that shop on that Sunday, besides this defendant and yourself?" The defendant's previous good character was established by the testimony of four citizens, three of whom were business men, and one "a reverend and a Hebrew teacher," who had known him intimately. The foregoing is the only material evidence in the case.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles Haldane, for appellant.
Robert C. Taylor, for the People.

LAUGHLIN, J. We are of opinion that this evidence raises a reasonable doubt as to the guilt of the defendant, that the verdict is against the weight of the evidence, and that justice requires that he should have a new trial. Code Cr. Proc. § 527. Counsel for the respondent, apparently appreciating that the testimony of the complaining witness as to the circumstances under which she claims that the assault took place is overborne by the other testimony in the case, seeks to sustain the conviction upon the theory that it is probable that there was no very violent assault upon her, and not much resistance upon her part. Her testimony as to the place of the assault and the circumstances under which it took place, with her screaming and resisting to the extent of her ability, is certainly very improbable. In view of the preponderating evidence that the defendant did not leave his place of business until after she had had ample time to pass out of the building, we think it will not do to speculate and accept as truthful that part of her testimony which shows the assault, and reject entirely her evidence concerning her resistance and outcries. Moreover, the nature of the testimony of the female physician is such as to indicate that the conditions she found were produced more recently than the preceding morning. This complainant's whereabouts from the time of the alleged assault should have been more satisfactorily accounted for, as well as her connection with Mrs. Soloman. It does not appear who Mrs. Soloman is, nor how or why she accompanied the complainant. The testimony of the sister, if true, does not necessarily sustain the evidence of the complaining witness. It would indicate that the defendant was guilty of some impropriety, but not necessarily that he was guilty of this serious crime. In view of the previous good character of the defendant, which is not questioned, and is sustained by reputable witnesses, and of the other evidence in his behalf, which we regard as preponderating, we think it will not do to allow the conviction in this case to stand.

The judgment should therefore be reversed, and a new trial ordered.

VAN BRUNT, P. J., and PATTERSON, J., concur.

INGRAHAM, J. (dissenting). I think that in this case there was a fair question for the jury, that the case was fairly submitted to the

jury by a charge which correctly presented the questions to be determined, that the rights of the defendant were in all respects protected, and that we are not justified in reversing the judgment. The testimony of the complainant was amply corroborated, and if the admission of the defendant, testified to by the complainant's sister, was believed, the jury were justified in finding that the defendant committed the assault upon the complainant. The testimony of the complainant as to the resistance that she made, while probably exaggerated, does not justify us in disregarding her testimony. Her recollection of what occurred at the time such an assault was made upon her would probably be considerably confused, and I think that she might, in entire good faith, exaggerate the resistance that she made. The character of the witnesses called by the defendant, the nature of their testimony, and their relation to the defendant's father, made their credibility a question for the jury. The relation that exists between an employer of young girls and such employés is such that it gives him great influence over them, and I think that their protection requires that this law should be strictly administered.

I think, therefore, that the judgment should be affirmed.

HATCH, J., concurs.